UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRINITY GROUP CONSTRUCTION, INC.<br>13849 Park Center Road, Suite A<br>Herndon, Virginia 20171<br>　　　　　Plaintiff,<br><br>　　v.<br><br>POOLE LANDSCAPING, LLC<br>7802 Biggs Ford Road<br>Frederick, Maryland 21701<br><br>　　　　　Defendant. | **Complaint for Damages**<br>**Plaintiff demands a jury trial**<br><br>Civil Action No. __20-cv-115_ |

## COMPLAINT

Plaintiff, Trinity Group Construction, Inc. ("Trinity"), by and through counsel, for its complaint herein, alleges as follows:

## **PARTIES**

1.　Plaintiff is a corporation formed under the laws of the Commonwealth of Virginia with its principal place of business at 13849 Park Center Road, Suite A, Herndon, Virginia 20171.

2.　Defendant, Poole Landscaping, LLC ("Poole"), is a limited liability company formed under the laws of the State of Maryland with its principal place of business at 7802 Biggs Ford Road, Frederick, Maryland 21701.

3.　As of the filing of this Complaint, both Plaintiff and Defendant are registered with the District of Columbia Department of Consumer and Regulatory Affairs as foreign entities authorized to transact business in the District of Columbia.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the parties and subject matter in this action pursuant to 28 U.S.C. §§ 1332.

5. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in the District of Columbia and Defendant is subject to the Court's personal jurisdiction in the District of Columbia.

**FACTUAL BACKGROUND**

### I. The Subcontract

6. On November 13, 2017, Trinity signed a subcontract with Defendant (the "Subcontract") under which Poole agreed to provide landscaping services (the "Work") in the District of Columbia for a housing cooperative called River Park Mutual Homes, Inc. (the "Owner"). A copy of the Subcontract is attached as Exhibit 1.

7. The Owner hired Trinity as the prime contractor to, among other things, renovate portions of the housing cooperative located at 1301 Delaware Avenue, SW, Washington, DC 20024 (the "Project"). Trinity hired Poole to perform the landscaping portions of the Project and agreed initially to pay Poole $694,500 for its Work.

8. Under the Subcontract, Poole agreed to "perform all work . . . to the satisfaction of [Trinity] and the Owner." Exhibit 1 at 2; *id.* art. 1.A ("The Subcontractor shall perform all Work . . . to the satisfaction of TRINITY Group Construction, Inc. and the Owner . . . .").

9. The Subcontract also made clear that "[p]ayment by the Owner to [Trinity]" was a "condition precedent to any obligation of [Trinity] to make payment to [Poole]," Ex. 1 art. 2.A, and that

"[n]o partial payment under th[e] Subcontract [would] be considered an acceptance of the Work, in whole or in part," *id.* art. 2.D.

10.     In the Subcontract, Poole represented "that it is fully qualified to perform all Work required by the Contract Documents," *id.* art. 4.A, and agreed to employ only "competent personnel" on the job, *id.* art. 12.A.  The Subcontract defined "Contract Documents" as including, among other things, "th[e] Subcontract Agreement and any Exhibits attached thereto" and the prime contract "between the Owner and TRINITY Group Construction, Inc." *Id.* art. 3.A; *see id.* art. 1.B.

11.     Under the Subcontract, Poole also "assume[d] the entire responsibility and liability for all Work required under the Contract Documents . . . *until final acceptance of the Work by Owner*," Ex. 1 art. 5.A (emphasis added), and agreed that it "would be liable to TRINITY . . . for all costs, damages or liabilities incurred by TRINITY . . . as a result of [Poole's] failure to perform strictly in accordance with the Contract Documents," including "(1) damages and delay costs payable by TRINITY . . . to Owner; (2) all damages and all delay costs incurred by TRINITY . . . allocable to th[e] project; (3) warranty and rework costs; (4) liability to third parties; (5) excess costs; [and] (6) attorney's fees and related costs," *id.* § 5.B.  Poole also agreed that its "liability for TRINITY . . . costs under the Contract Documents shall include a 15% markup" "as liquidated damages to compensate TRINITY . . . for its administrative costs and/or to allow TRINITY . . . a reasonable profit on Work which TRINITY . . . must perform as a result of [Poole's] failure to perform." Ex. 1 art. 5.E.

12.     Under Article 6 of the Subcontract, Poole "warrant[ed] to TRINITY . . . and the Owner that all Work under th[e] Subcontract [would] be of good quality, free from faults and defects, and in conformance with the Contract Documents." Ex. 1 art. 6.B.  Article 6 declared that "[a]ll work not

3

conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective at the discretion of TRINITY . . . or the Owner." *Id.*

13. Article 8 of the Subcontract obligated Poole to "promptly replace or correct any Work or materials which TRINITY . . . or Owner [] reject as failing to conform to the requirements of th[e] Subcontract," and reserved for Trinity the right to do so if Poole did not do so "within a reasonable time," in which case Poole would be liable to Trinity for the cost thereof. Ex. 1 art. 8.A

14. Article 9 of the Subcontract obligated Poole to "at all times keep the project site free from waste materials, rubbish, or debris resulting from [Poole's] Work and remove the same from the site daily," Ex. 1 art. 9.A, and if Poole failed to do so, Trinity had "the right to perform such cleanup and back-charge" Poole, *id.* art. 9.D.

15. If Poole failed "to provide sufficient properly skilled Workmen or materials of the proper quality," "to prosecute the Work according to the current schedule," or "to comply with all provisions of th[e] Subcontract or the Contract Documents" and/or caused "the stoppage or delay of or interference with the work of TRINITY . . . or of any other subcontractor," and failed to remedy any of these issues within three days after Trinity informed Poole of the issue(s) in writing, Trinity had the right to, among other things, "terminate the Subcontract for default." Ex. 1 art. 16.A. If Trinity chose to terminate the Subcontract for default, Trinity had the right, "at its option," to "either itself or through others complete the Work, by whatever method TRINITY . . . may deem expedient," and Poole was not "entitled to receive any further payment until final completion," at which time "if the unpaid balance of the price to be paid [] exceed[ed] the expense incurred by TRINITY" to complete the Work, Trinity would owe Poole for the difference. *Id.* If, however, Trinity's costs to complete the Work exceeded the unpaid balance of the Subcontract price, Poole would owe Trinity the difference. *Id.*

## II.     Poole's Deficient Performance

16.    Poole agreed under the Subcontract to "[f]urnish and install **Landscaping** work in accordance with the contract documents and specifications," including "any work not specifically called for but reasonably inferable from the contract documents." Ex. 1 at Ex. B.

17.    Poole understood that Trinity was relying on Poole to ensure that the landscaping work on the Project was performed completely, properly, and according to the Project schedule.

18.    Poole, nevertheless, failed to perform the Work completely, properly, and in accordance with the Project schedule. Among other things, upon information and belief, Poole:

> a.  billed Trinity for 100% of the Site Preparation portion of the Work, but only properly completed 80% of the Site Preparation;
>
> b.  billed Trinity for 68% of the Paving portion of the Work, but the Owner's Landscape Architect rejected all of Poole's paving work, and as a result, Trinity and another landscaping contractor had to redo that work;
>
> c.  billed Trinity for 85% of the Planting portion of the Work, but only completed 35% of that work;
>
> d.  billed Trinity for 96% of the Irrigation portion of the Work, but only completed 30% of that work;
>
> e.  billed Trinity for 70% of the Site Furnishings portion of the Work, but only completed 32% of that work;
>
> f.  failed to provide sufficient, competent personnel on site to complete scheduled activities and avoid delaying the work of others;
>
> g.  failed to provide supervisory personnel on site;
>
> h.  failed to provide timely representation for job-site progress meetings;

   i. failed to promptly correct items of its work identified by Trinity, Owner, or Owner's representatives as incomplete or substandard;

   j. failed to take whatever steps necessary to perform its work in a timeframe and sequence to meet the Project schedule;

   k. failed to maintain the Project properly;

   l. failed to keep the Project site free from waste materials, rubbish, and debris resulting from Poole's work and remove the same from the site daily; and

   m. failed to provide work under the Subcontract that was of good quality, free of faults and defects, and in conformance with the Contract Documents.

19. On various occasions between November 2017 and June 26, 2019, Trinity notified Poole of Poole's various failures in performing the Work on the Project. Poole, however, failed to correct the deficiencies noted by Trinity, and as a result, Trinity terminated the Subcontract on June 26, 2019 for Poole's default on its contractual obligations.

### III. Trinity's Corrective Action

20. After terminating Poole, Trinity hired another landscaping contractor to complete the landscaping work at the Project. During the course of completing the landscaping work, Trinity's new contractor discovered that Poole had failed to perform much of the Work it had certified that it had completed in its applications to Trinity for payment. Poole charged Trinity for almost $300,000 of Work that Poole never performed and/or poorly performed.

21. As a result of Poole's failure to complete the Work and/or deficient performance, Trinity had to pay its new landscape contractor more than $400,000.

## FIRST CLAIM FOR RELIEF
(BREACH OF CONTRACT)

22. Plaintiff incorporates by reference the above paragraphs as if set forth fully herein.

23. Trinity and Poole entered into a valid contract under which Poole agreed to provide landscaping services to the Owner in accordance with the terms and conditions of the Subcontract.

24. The Subcontract obligated Poole to employ competent personnel on the jobsite, provide only Work of good quality and free from faults and defects and in conformance with the Contract Documents.

25. The Subcontract obligated Poole to "keep the project site free from waste materials, rubbish, or debris resulting from [Poole's] Work and remove the same from the site daily."

26. The Subcontract obligated Poole to "proceed with the Work in a prompt and diligent manner, in accordance with TRINITY['s] . . . construction schedule."

27. Poole materially breached the Subcontract by, among other things:

   a. failing to provide sufficient, properly skilled, and competent personnel to perform and supervise the Work;

   b. charging Trinity for work that Poole represented was completed, but that, in fact, was only partially completed or not completed at all;

   c. not providing quality materials and/or failing to maintain the materials provided;

   d. charging Trinity for materials that were never provided or were substandard when provided;

   e. failing to cleanup;

   f. failing to perform the Work in a timely fashion; and

   g. overcharging Trinity for work Poole allegedly performed.

28. Poole's performance on the Subcontract was so poor that by the time Trinity terminated the Subcontract, the Owner's Construction Manager, Board of Directors, Landscape Architect, consulting engineering firm, and counsel all demanded that Trinity terminate the Subcontract and replace Poole with a competent landscaping contractor.

29. As a result of Poole's poor performance, Trinity terminated the Subcontract and was forced to hire another landscaping company to redo and complete the work required of Poole under the Subcontract.

30. As a result of Poole's breaches of the Subcontract, Trinity has suffered more than $500,000 in damages.

## SECOND CLAIM FOR RELIEF
(BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING)

31. Plaintiff incorporates by reference the above paragraphs as if set forth fully herein.

32. Trinity contracted with Poole based on Poole's representation that it was "fully qualified to perform all Work required by the Contract Documents" with respect to "Landscaping."

33. Poole agreed under the Subcontract to "[f]urnish and install **Landscaping** work in accordance with the contract documents and specifications," including "any work not specifically called for but reasonably inferable from the contract documents."

34. Poole understood that Trinity was relying on Poole to ensure that the landscaping work on the Project was performed completely, properly, and according to the Project schedule.

35. Poole, which purports to have more than twenty-five (25) years of experience in the landscaping business, failed to perform its work completely, properly, or according to the Project schedule.

36. As a result of Poole's failure to perform its work completely, properly, and according to the Project schedule, Trinity terminated the Subcontract and was forced to hire another landscaping company to redo and complete the work required of Poole under the Subcontract.

37. As a result of Poole's breach of the implied duty of good faith and fair dealing, Trinity has suffered more than $500,000 in damages.

## THIRD CLAIM FOR RELIEF
(FRAUD/INTENTIONAL MISREPRESENTATION)

38. Plaintiff incorporates by reference the above paragraphs as if set forth fully herein.

39. As of June 26, 2019, Poole billed Trinity, and Trinity paid, for Poole's alleged completion of 85% of the Planting portion of the Work. When Poole billed Trinity for the Planting portion of the Work, Poole knew that it had not performed 85% of the Planting portion of the Work and, therefore, that its request for payment for performing such work was materially false.

40. As of June 26, 2019, Poole billed Trinity, and Trinity paid, for Poole's alleged completion of 96% of the Irrigation portion of the Work. When Poole billed Trinity for the Irrigation portion of the Work, Poole knew that it had not performed 96% of the Irrigation portion of the Work and, therefore, that its request for payment for performing such work was materially false.

41. As of June 26, 2019, Poole billed Trinity, and Trinity paid, for Poole's alleged completion of 70% of the Site Furnishings portion of the Work. When Poole billed Trinity for the Site Furnishings portion of the Work, Poole knew that it had not performed 85% of the Site Furnishings portion of the Work and, therefore, that its request for payment for performing such work was materially false.

42. Trinity and the Owner relied on Poole's representations that it had completed the portions of the Work for which it billed Trinity.

43. As a result of Poole's misrepresentations regarding the portions of the Work it had performed, Trinity overpaid Poole by at least $270,000 and suffered additional damages when it had to hire another landscaping contractor to complete the Work under the Subcontract.

### FOURTH CLAIM FOR RELIEF
(NEGLIGENT MISREPRESENTATION)

44. Plaintiff incorporates by reference the above paragraphs as if set forth fully herein.

45. As of June 26, 2019, Poole billed Trinity, and Trinity paid, for Poole's alleged completion of 85% of the Planting portion of the Work. When Poole billed Trinity for the Planting portion of the Work, Poole should have known that it had not performed 85% of the Planting portion of the Work and, therefore, that its request for payment for performing such work was materially false.

46. As of June 26, 2019, Poole billed Trinity, and Trinity paid, for Poole's alleged completion of 96% of the Irrigation portion of the Work. When Poole billed Trinity for the Irrigation portion of the Work, Poole should have known that it had not performed 96% of the Irrigation portion of the Work and, therefore, that its request for payment for performing such work was materially false.

47. As of June 26, 2019, Poole billed Trinity, and Trinity paid, for Poole's alleged completion of 70% of the Site Furnishings portion of the Work. When Poole billed Trinity for the Site Furnishings portion of the Work, Poole should have known that it had not performed 85% of the Site Furnishings portion of the Work and, therefore, that its request for payment for performing such work was materially false.

48. Trinity and the Owner relied on Poole's representations that it had completed the portions of the Work for which it billed Trinity.

49. As a result of Poole's misrepresentations regarding the portions of the Work it had performed, Trinity overpaid Poole by at least $270,000 and suffered additional damages when it had to hire another landscaping contractor to complete the Work under the Subcontract.

**FIFTH CLAIM FOR RELIEF**
(BREACH OF EXPRESS WARRANTY)

50. Plaintiff incorporates by reference the above paragraphs as if set forth fully herein.

51. Under the Subcontract, Poole warranted its performance of the Work to Trinity "on the same terms, and for the same period" as Trinity warrants the Work to the Owner under the Contract Documents. In addition, Poole warranted to Trinity and the Owner that "all materials furnished shall be new unless otherwise specified, and that all Work under th[e] Subcontract shall be of good quality, free from faults and defects, and in conformance with the Contract Documents."

52. While performing the Work under the Subcontract, Poole provided materials that were not new and performed work that was not of good quality, free from faults and defects, and/or in conformance with the Contract Documents.

53. As a result of Poole's failure to provide materials that were new and to perform work of good quality, free from faults and defects, and in conformance with the Contract Documents, Trinity terminated the Subcontract and was forced to hire another landscaping company to redo and complete the work required of Poole under the Subcontract.

54. As a result of Poole's breach of its express warranties, Trinity has suffered more than $500,000 in damages.

**<u>DEMAND</u>**

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor on all the above-mentioned claims for relief, and against Poole Landscaping, LLC, for compensatory damages in an amount to be determined at trial, plus interest, costs, and attorney fees.

Plaintiff also requests any other additional and further relief that the Court deems just and proper.

Date: January 15, 2020

TAYMAN LANE CHAVERRI LLP

<u>s/ Jason D. Wallach</u>
David Lee Tayman, Bar No. 15093
Katie Lane Chaverri, Bar No. 17074
Jason D. Wallach, Bar No. 18466 (D.C. 456154)
Tayman Lane Chaverri LLP
601 13th Street, N.W.
Suite 900 South
Washington, DC 20005
(202) 695-8146 (telephone)
(202) 478-2781 (facsimile)
dtayman@tlclawfirm.com
kchaverri@tlclawfirm.com
jwallach@tlclawfirm.com

Counsel to Plaintiff, Trinity Group Construction, Inc.